## SANDERS & a. *vs.* REED.

If there be two mortgages upon land, neither of the mortgagees having entered, and the mortgager, without the assent of either of them, cut timber upon the land, after which the first mortgage is discharged, the second mortgagee may maintain trespass *quare clausum fregit*, for the cutting of the timber.

C., being the owner of a tract of land, mortgaged the same to R., and then conveyed the land to T., taking back a mortgage from him, to secure the purchase money, which he assigned to S. After this, T. remaining in possession, another person cut timber upon the land, under a license from him, without the assent of either of the mortgagees, and subsequently the debt due to R. was paid.— *Held*, that S., the assignee of the second mortgage, might maintain trespass *quare clausum fregit* against the party who cut the timber.

TRESPASS, for breaking the plaintiff's close, and cutting certain pine trees; submitted upon a statement of facts.

On the 16th day of September, 1839, Norris Colburn, being in possession of the premises, conveyed the same to Stephen G. Tyler, and on the same day took a mortgage back from Tyler, which mortgage, on the 21st day of November, 1839, was duly assigned to the plaintiffs. Tyler remained in the

Sanders *v.* Reed.

actual possession of the premises, from the date of his mort-
gage deed until the 3d day of March, 1841, when the plain-
tiffs took possession. The trees were cut by the defendant,
under a license from Tyler, between the first day of January,
1841, and the first day of March, of the same year.

On the 17th day of May, 1837, Colburn, being the owner
of this land, mortgaged it, with other real estate, to Susan
Robeson, to secure the payment of certain notes signed by
him and Milton Chaplin. On the 16th day of April, 1841,
Chaplin paid the notes to Mrs. Robeson, and they were de-
livered to him, but the mortgage deed still remains in her
hands, undischarged. The notes were joint and several, but
as between Colburn and Chaplin they were the proper debts
of Colburn. The payments were made by Chaplin, with
the avails of the sale of that portion of the lands mortgaged
to Mrs. Robeson not included in the mortgage to the plain-
tiffs, excepting about two hundred dollars, paid from his own
money. This last sum is secured by an attachment of the
real estate of Colburn.

Colburn occupied the land until the date of his deed to
Tyler, and Tyler occupied until the 3d day of March, 1841,
when the plaintiffs took possession. Colburn and Tyler,
during the time of their occupancy, dealt with the premises
as their own, by cutting timber, manufacturing the same,
and selling, without let, hindrance, or molestation, either
from the mortgagee or the assignees.

Mrs. Robeson lived thirty miles from the premises, and
the plaintiffs live fifteen miles from the same, and no evi-
dence exists that either of them had any knowledge of the
manner the mortgagers were dealing with the premises, nor
does it appear that they attempted to ascertain.

*Chamberlain*, for the plaintiffs. The defendant stands
confessedly in the place of Tyler, the mortgager. He had
no greater rights than a tenant at will, and is answerable
in trespass for cutting the timber, that being an act of

waste. *5 N. H. Rep.* 54, *Pettingill* vs. *Evans;* 1 *N. H. Rep.* 169, *Brown* vs. *Cram.*

The first mortgage cannot affect the case, the mortgagee never having entered. *5 N. H. Rep.* 529, *Cavis* vs. *Mc-Clary.*

*Edwards, & A. A. Parker*, for the defendant. The defendant went on under a license from Tyler, and must stand in the same situation as he would have done.

The plaintiffs had not entered. They had not the actual possession, nor the right of possession. They were second mortgagees, and the first mortgage had not been discharged.

If the defendant were a trespasser as against any body, he was so as to the first mortgagee.

The fact that that mortgage has been removed since, does not alter the rights of the party.

PARKER, C. J. There is a principle in equity, that a surety is entitled to the benefit of any security which the creditor may have taken from the principal.

Whether Chaplin could have availed himself of this principle, and have held under the mortgage to Mrs. Robeson, is a question which it does not seem necessary to settle in this case. He paid the notes, and discharged the debt, without obtaining the mortgage, and without making any claim to the benefit of it, so far as appears from this case. For the balance which he paid, he has made an attachment, and is secured. There is no reason for thrusting an interest upon him, which he has never claimed.

In fact, it may admit of doubt whether he would be entitled to the benefit of such a principle against Tyler, a *bona fide* purchaser, or against the plaintiffs, as assignees of Tyler's mortgage, unless they can be made chargeable with notice that Chaplin was a surety, and therefore took subject to his rights as such. The defendant is in no way connected with Chaplin, nor have any rights of the latter been urged in the argument as sustaining the defence.

It is settled that a mortgagee may maintain trespass against a mortgager for cutting timber upon the land, unless his assent is shown, or is fairly to be deduced from the circumstances of the case.   *Smith* vs. *Moore*, (11 *N. H. Rep.* 551 ;) 5 *N. H. Rep.* 54, *Pettengill* vs. *Evans.*   There is no evidence of assent in this case, and the plaintiffs' right of action would be clear, had they held the first mortgage upon the land at the time.

But it is contended that the mortgage to Mrs. Robeson was in force, as a valid title to the land, at the time when the timber was cut ; and that if there was any right of action for the cutting, it was in her, and not in the plaintiffs ; or, at least, that by reason of that mortgage, and the actual possession of the defendant, the plaintiffs, who were second mortgagees, had neither the actual nor constructive possession, and cannot therefore maintain this action.

We are of opinion that this objection cannot avail.

A mortgage (as was stated in the case *Smith* vs. *Moore*,) is regarded as a mere security for the debt, or as passing the legal estate, whichever may be necessary for the preservation of the rights of the mortgagee.   The mortgagee has the legal estate for the purpose of all lawful protection of his interests.

Tested by this rule, Mrs. Robeson is not in this case to be regarded as having the legal estate, at the time when this timber was cut, notwithstanding her mortgage was then in existence, because that is not necessary, in order to the protection of her interests.   Her mortgage has been satisfied ; and, so far as appears, she made no claim on account of this act, as injurious to her.   She has no interest to be protected, and no reason to make any objection, nor can she now maintain any action.   There is no fair purpose to be answered by considering the legal estate in her, as the result would only be to defeat a right of action which would otherwise lawfully exist in the plaintiffs, and this without any benefit to her.

Tyler, who made the second mortgage, had no more right

to do acts of waste against the second mortgagee, or his assignee, than he had as against the first.    Each mortgagee, for the purpose of protecting his rights, is to be regarded, as against the mortgager, as holding the legal estate.    Any act of waste, without the assent of either, may be regarded as injurious to both.    The paramount right of action in such case may be regarded as in the first mortgagee, so long as the first mortgage exists ; and it may be supposed to be a good defence to an action by the second mortgagee, that the first mortgage still existed, unless it could be shown that the first mortgagee assented, and therefore had no right of action. But it appearing that the first mortgage is extinguished, and that no paramount right exists, and the defendant therefore not being answerable to any one else, there seems to be no good reason why he who was a wrong doer, as to both, should not answer to the second mortgagee, who, after the extinguishment of the first mortgage, may well be regarded as having been the owner of the legal estate, so far as that is necessary to the preservation of his rights under the mortgage.    The first mortgage, under such circumstances, is to be regarded as having been a mere security.

This view of the matter does not prejudice any right of the defendant.    He stands confessedly in the place of the mortgager, and had no right, as against either mortgagee, to do any act of waste.    As against either mortgage, standing alone, an act of waste, without assent, would be a wrong, for which trespass might be maintained.

The first mortgage having been removed, without any entry by the mortgagee, the defendant is relieved from any danger of a claim upon that mortgage, and the case therefore now stands as if that mortgage had never existed.    To interpose that mortgage, as a conveyance of the legal estate, would be to interpose a technical objection for the purpose of working injustice, and would enable a mortgager to impair the security of the second mortgagee, with impunity, unless he were restrained by injunction.

*Judgment for the plaintiffs.*